AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### District of Maryland

United States of America
v.
JOEL ACOSTA

)
)
)
)
)
)
)

Case No.  13-214 SKG-

_____
*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____January 31, 2013_____ in the county of _____Cecil_____ in the

_____ District of _____Maryland_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Section 846 | Conspiracy to distribute and possess with the intent to distribute 100 grams or more of heroin |

This criminal complaint is based on these facts:

See attached affidavit in support of the complaint

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Douglas M. Rechtin, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___2/1/13___

_____
*Judge's signature*

City and state:          Baltimore, Maryland

Susan K. Gauvey, U.S. Magistrate Judge
*Printed name and title*

# IN THE UNITED STATES COURT FOR THE
## DISTRICT OF MARYLAND
### NORTHERN DIVISION

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Douglas M. Rechtin, Special Agent with Homeland Security Investigations (HSI), being a duly Sworn Federal Officer, do state as follows:

1. This affidavit is submitted in support of a criminal complaint charging **Kelvin MARTE** and **Joel ACOSTA** with conspiracy to distribute and possess with the intent to distribute in excess of 100 grams of heroin, in violation of 21 U.S.C. § 846.

2. Your affiant is currently employed by the U. S. Department of Homeland Security, Homeland Security Investigations (HSI)[1], as a Special Agent and have been so since October 2008. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, U.S.C. § 2510(7) and empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code Section 2516.

3. As part of my employment with HSI, I attended the Criminal Investigator Training Program, which is a twelve week basic program for all Federal criminal investigators held at the Federal Law Enforcement Training Center in Glynco, Georgia. Additionally, I attended Immigration & Customs Enforcement Special Agent Training, which is an additional eleven weeks of training.

4. Your affiant is currently assigned to the Baltimore Seaport and Airport – High Intensity

---

[1] In 2010, Immigration & Customs Enforcement ("ICE") underwent a re-organization. Several investigative components of the Department of Homeland Security were merged into one investigative agency, called Homeland Security Investigations ("HSI").

Drug Trafficking Area (HIDTA) Group, investigating unlawful acts and violations of federal customs law. In the course of my current employment, I have participated in numerous federal and state narcotics investigations relating to drug trafficking, drug smuggling, and money laundering violations. During the course of those investigations, I have been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; conducting short and long-term undercover operations, including reverse undercover drug operations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification system data; conducting court-authorized electronic surveillance, including wire interceptions; and preparing and executing search warrants that have led to seizures of narcotics, firearms, and other contraband. The information in this affidavit is based on my personal knowledge and information provided to me by other law enforcement officers.

5. On January 31, 2013, Trooper First Class (TFC) Ryan McNeely of the Maryland State Police (MSP), Pro-Active Criminal Enforcement Team (PACE) was on routine patrol in I-95 south bound in Cecil County, Maryland. While on routine patrol, TFC McNeely observed a white Acura TL, bearing Florida registration PD936G. Using a MSP issued Pro II Laser speed measuring device, TFC McNeely measured the vehicle traveling in excess of the posted speed limit. TFC McNeely activated his emergency vehicle equipment and affected a stop of the vehicle on I-95 south at mile marker 98.6.

6. TFC McNeely made contact with the driver, subsequently identified via his Georgia driver's license as Joel ACOSTA. TFC McNeely observed the driver's side of the windshield had a large – approximately one to two feet in length – crack in it, which impaired the driver's view through the windshield. The front passenger seat was occupied by Kelvin MARTE, identified by his New

2

York identification. During the course of the stop, TFC McNeely and MSP Sgt. Mike Conner, observed numerous criminal indicators. As a matter of collecting routine information, TFC McNeely attempted to communicate with the driver. ACOSTA indicated he did not speak or understand English.

7. The following conversation took place during the stop between Sgt. Conner and the passenger, Kelvin MARTE, who could communicate in conversational English. Sgt. Conner, due to questionable registration information, asked MARTE who the owner of the vehicle was. MARTE turned to the driver and answered "he does" (meaning ACOSTA). MARTE made statements indicating that ACOSTA works for a car dealer. Sgt. Conner asked MARTE where ACOSTA worked, to which MARTE responded "Atlanta." Sgt. Conner asked again, "where" and MARTE replied "Miami, Florida." Sgt. Conner then asked what the purpose of the trip was, to which MARTE replied "vacation." Sgt. Conner asked MARTE how he knew ACOSTA, to which MARTE replied that ACOSTA had come up from Florida for two weeks to visit. MARTE further stated that they were going to Miami for a couple of days.

8. A visual inspection of the passenger compartment revealed no baggage or luggage of any type, which is inconsistent with any person going on a multi-state multi-week vacation. During the vehicle stop, a MSP K-9 unit, Senior Trooper Connolly and her K-9 partner "Leyna" arrived. Senior Trooper Connolly and K-9 Leyna conducted an external scan of the vehicle. K-9 Leyna alerted to the presence of an odor of narcotics on the exterior of the vehicle. Subsequently, a probable cause search of the vehicle's interior and exterior was conducted.

9. During the search of the vehicle, Sgt. Conner inspected the undercarriage and noticed non-factory, non-Original Equipment Manufacturer (OEM) sheet metal fitted to the center line of the vehicle. This sheet metal was located directly under the center console area of the vehicle. Sgt.

Conner, who is a court recognized expert in concealed vehicle traps, believed the center console of the vehicle contained a concealed compartment. Subsequently, Sgt. Conner was able to locate non-factory wiring leading to the center console and manipulated a mechanical operating system which caused the trap to open by sliding on rails toward the rear of the vehicle. Troopers gained access to the trap and discovered a plastic bag found to contain a compressed brick shaped and off-white in color substance. This substance was subsequently field tested by MSP and found to test positive for heroin. The approximate weight of the heroin was found to be 435 grams.

10. Both MARTE and COSTA where taken into MSP custody and transported to the MSP Barracks in Perryville for further investigation. Additionally a full inventory search of the vehicle revealed no luggage or personal effects for either subject. At approximately 1000 hours, HSI Special Agents and Task Force Officers arrived at the Perryville Barracks. HSI S/A Lynn conducted a criminal records check of both subjects and found the following:

a. Joel ACOSTA has a pending criminal prosecution in New York. In December 2012, ACOSTA was arrested by the New York Police Department (NYPD) when he was observed conducting a drug transaction with MARTE in the Bronx. During this arrest, a small amount of heroin was recovered and a bag containing $513,045.00 in U.S. currency was located in the back seat of the vehicle occupied by MARTE. Both ACOSTA and MARTE were charged with various felony narcotics and money laundering violations in New York.

b. Kelvin MARTE has the following arrests and convictions in addition to the pending narcotics and money laundering charges in New York:

- May 7, 2005, MARTE was arrested by Washington D.C. Metropolitan Police Department for Distribution of cocaine and distribution of heroin;

- July 9, 2008, MARTE was federally sentenced to 60 months for the unlawful distribution of 500 grams or more of cocaine, with 48 months supervised release. On February 28, 2012, MARTE came under the supervision of United States Probation.

11. S/A Lynn conducted post arrest interviews with both ACOSTA and MARTE. S/A Lynn obtained basic biological information and family history from ACOSTA, who then requested an

4

attorney. No further questioning was conducted. S/A Lynn interviewed MARTE, who provided his current residence and additional identifiers. S/A Lynn also inquired about MARTE's prior criminal history, not including current activity. During the course of the interview, MARTE stated that the previous federal charge in Washington, DC, was the result of him "middle manning" a cocaine delivery from New York to Washington.

12. During the arrest and booking procedure, S/A Lynn located a business card in MARTE's wallet for a Probation Officer with the United States Probation Office in New York. S/A Lynn contacted the office and confirmed that MARTE is on federal supervised release. S/A Lynn was informed that MARTE is the subject of a Federal Probation violation warrant.

13. Your Affiant knows through his training, knowledge, and expertise that 435 grams of heroin has a street value in Maryland of approximately $35,000, indicating to your Affiant that the amount of heroin was in excess of the amount intended for personal use and would indicate to your Affiant an intent to distribute.

14. Based on the foregoing, there is probable cause to believe that MARTE and ACOSTA, did conspire with others known and unknown to distribute and possess with the intent to distribute over 100 grams of heroin, in violation of 21 U. S. C. § 846.

I, Douglas M. Rechtin, affirm under penalties of perjury that the facts and circumstances recounted are true and accurate to the best of my knowledge, information and belief.

Special Agent
Homeland Security Investigations

Signed to and sworn before me this _____ day of February 2013.

_____
Susan K. Gauvey
United States Magistrate Judge